# EXHIBIT 1

# Commonwealth of Massachusetts

TRIAL COURT OF THE COMMONWEALTH
SUPERIOR COURT DEPARTMENT
CIVIL DOCKET NO. 2185 CV 01072 — ⬦

PANADOROU PROPERTIES, LLC and
CHRIS J. PANAGIOTIDIS, ESQ. , PLAINTIFF(S),

v.

J.H. LYNCH & SONS, INC. and
ZURICH AMERICAN INSURANCE , DEFENDANT(S)
COMPANY

## SUMMONS

THIS SUMMONS IS DIRECTED TO ___J.H. Lynch & Sons, Inc.___ . (Defendant's name)

**You are being sued.** The Plaintiff(s) named above has started a lawsuit against you. A copy of the Plaintiff's Complaint filed against you is attached to this summons and the original complaint has been filed in the Worcester Superior Court. **YOU MUST ACT PROMPTLY TO PROTECT YOUR RIGHTS.**

1.  **You must respond to this lawsuit in writing within 20 days.** If you do not respond, the court may decide the case against you and award the Plaintiff everything asked for in the complaint. You will also lose the opportunity to tell your side of the story. You must respond to this lawsuit in writing even if you expect to resolve this matter with the Plaintiff. **If you need more time to respond, you may request an extension of time in writing from the Court.**

2.  **How to Respond.** To respond to this lawsuit, you must file a written response with the court **and** mail a copy to the Plaintiff's Attorney (or the Plaintiff, if unrepresented). You can do this by:

    a.  Filing your signed original response with the Clerk's Office for Civil Business, Worcester Court, 225 Main Street (address), by mail or in person, **AND** Superior
    Worcester, MA 01608
    b.  Delivering or mailing a **copy** of your response to the Plaintiff's Attorney/Plaintiff at the following address: Kurt L. Binder, Esq., SEDER & CHANDLER, LLP, 339 Main Street, Worcester, MA 01608

3.  **What to include in your response.** An **"Answer"** is one type of response to a Complaint. Your Answer must state whether you agree or disagree with the fact(s) alleged in each paragraph of the Complaint. Some defenses, called affirmative defenses, must be stated in your Answer or you may lose your right to use them in court. If you have any claims against the Plaintiff (referred to as **counterclaims**) that are based on the same facts or transaction described in the Complaint, then you must include those claims in your Answer. Otherwise, you may lose your right to sue the Plaintiff about anything related to this lawsuit. If you want to have your case heard by a jury, you must **specifically** request a jury trial in your Answer or in a written demand for a jury trial that you must send to the other side and file with the court no more than 10 days after sending your Answer. You can also respond to a Complaint by filing a "Motion to Dismiss," if you believe that the complaint is legally invalid or legally insufficient. A Motion to Dismiss must be based on one of the legal deficiencies or reasons listed under **Mass. R. Civ. P. 12**. If you are filing a Motion to Dismiss, you must also comply with the filing procedures for "Civil Motions" described in the rules of the Court in which the complaint was filed, available at www.mass.gov.courts/case-legal-res/rules of court.

4.   **Legal Assistance.** You may wish to get legal help from a lawyer. If you cannot get legal help, some basic information for people who represent themselves is available at www.mass.gov/courts/selfhelp.

5.   **Required information on all filings:** The "civil docket number" appearing at the top of this notice is the case number assigned to this case and must appear on the front of your Answer or Motion to Dismiss. You should refer to yourself as the "Defendant."

Witness Hon. Judith Fabricant, Chief Justice on _____, 20____. (SEAL)

Clerk-Magistrate

**Note:** The number assigned to the Complaint by the Clerk-Magistrate at the beginning of the lawsuit should be indicated on the summons before it is served on the Defendant.

## PROOF OF SERVICE OF PROCESS

I hereby certify that on _____, 20___, I served a copy of this summons, together with a copy of the complaint in this action, on the defendant named in this summons, in the following manner (See Mass. R. Civ. P. 4 (d)(1-5)):

_____

_____

**Worcester County Sheriff's Office P.O. Box 1066 Worcester, MA 01613 (508) 752-1100**

10/4/2021

I hereby certify and return that on 10/1/2021 at 4:41 PM I served a true and attested copy of the SUMMONS AND COMPLAINT, CIVIL ACTION COVER SHEET, CIVIL TRACKING ORDER,PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS in this action in the following manner: To wit, by delivering in hand to JOHN NESSER, , agent, person in charge at the time of service for J.H. LYNCH & SONS, INC at 18 MCCRACKEN ROAD MILLBURY, MA 01527 . Service Fee ($30.00) Attest ($5.00) Mileage ($3.84) Office Expense ($20.00) Mailing ($3) ($3.00) Conveyance ($3.00) Total: $64.84

_____

Steven Trottier
Deputy Sheriff

# Commonwealth of Massachusetts

TRIAL COURT OF THE COMMONWEALTH
SUPERIOR COURT DEPARTMENT
CIVIL DOCKET NO. ___2185-CV-01072___

PANADOROU PROPERTIES, LLC and
CHRIS J. PANAGIOTIDIS, ESQ.
_____, PLAINTIFF(S),

v.

J.H. LYNCH & SONS, INC. and
ZURICH AMERICAN INSURANCE___, DEFENDANT(S)
COMPANY

## SUMMONS

THIS SUMMONS IS DIRECTED TO _Zurich American Insurance Company_(Defendant's name)

**You are being sued.** The Plaintiff(s) named above has started a lawsuit against you. A copy of the Plaintiff's Complaint filed against you is attached to this summons and the original complaint has been filed in the _Worcester Superior_ Court. **YOU MUST ACT PROMPTLY TO PROTECT YOUR RIGHTS.**

1.   **You must respond to this lawsuit in writing within 20 days.** If you do not respond, the court may decide the case against you and award the Plaintiff everything asked for in the complaint. You will also lose the opportunity to tell your side of the story. You must respond to this lawsuit in writing even if you expect to resolve this matter with the Plaintiff. **If you need more time to respond, you may request an extension of time in writing from the Court.**

2.   **How to Respond.** To respond to this lawsuit, you must file a written response with the court **and** mail a copy to the Plaintiff's Attorney (or the Plaintiff, if unrepresented). You can do this by:
     a.   Filing your **signed original** response with the Clerk's Office for Civil Business, _Worcester Superior_ Court,
     225 Main Street
     Worcester, MA 01608 (address), by mail or in person, **AND**
     b.   Delivering or mailing a **copy** of your response to the Plaintiff's Attorney/Plaintiff at the following address: _Kurt L. Binder, Esq., SEDER & CHANDLER, LLP, 339 Main Street, Worcester, MA 01608_

3.   **What to include in your response.** An **"Answer"** is one type of response to a Complaint. Your Answer must state whether you agree or disagree with the fact(s) alleged in each paragraph of the Complaint. Some defenses, called affirmative defenses, must be stated in your Answer or you may lose your right to use them in court. If you have any claims against the Plaintiff (referred to as **counterclaims**) that are based on the same facts or transaction described in the Complaint, then you must include those claims in your Answer. Otherwise, you may lose your right to sue the Plaintiff about anything related to this lawsuit. If you want to have your case heard by a jury, you must **specifically** request a jury trial in your Answer or in a written demand for a jury trial that you must send to the other side and file with the court no more than 10 days after sending your Answer. You can also respond to a Complaint by filing a **"Motion to Dismiss,"** if you believe that the complaint is legally invalid or legally insufficient. A Motion to Dismiss must be based on one of the legal deficiencies or reasons listed under **Mass. R. Civ. P. 12.** If you are filing a Motion to Dismiss, you must also comply with the filing procedures for "Civil Motions" described in the rules of the Court in which the complaint was filed, available at www.mass.gov.courts/case-legal-res/rules of court.

4. **Legal Assistance.** You may wish to get legal help from a lawyer. If you cannot get legal help, some basic information for people who represent themselves is available at www.mass.gov/courts/selfhelp.

5. **Required information on all filings:** The "civil docket number" appearing at the top of this notice is the case number assigned to this case and must appear on the front of your Answer or Motion to Dismiss. You should refer to yourself as the "Defendant."

Witness Hon. Judith Fabricant, Chief Justice on _____, 20____. (SEAL)

Clerk-Magistrate

Note: The number assigned to the Complaint by the Clerk-Magistrate at the beginning of the lawsuit should be indicated on the summons before it is served on the Defendant.

## PROOF OF SERVICE OF PROCESS

I hereby certify that on _____, 20___, I served a copy of this summons, together with a copy of the complaint in this action, on the defendant named in this summons, in the following manner (See Mass. R. Civ. P. 4 (d)(1-5)):

_____

_____

_____

Dated: _____, 20____        Signature: _____

N.B.    **TO PROCESS SERVER:**

   **PLEASE ENTER THE DATE THAT YOU MADE SERVICE ON THE DEFENDANT IN THIS BOX — BOTH ON THE ORIGINAL SUMMONS AND ON THE COPY OF THE SUMMONS SERVED ON THE DEFENDANT.**

```
┌─────────────────────────────────┐
│                                 │
│                                 │
│                                 │
└─────────────────────────────────┘
```

| CIVIL ACTION COVER SHEET | DOCKET NUMBER<br>2185CV01072 | Trial Court of Massachusetts<br>The Superior Court |
|---|---|---|
| | | COUNTY  Worcester Superior Court (Worcester) |

| Plaintiff    PANADOROU PROPERTIES, LLC and CHRIS J. PANAGIOTIDIS | Defendant:    J.H. LYNCH & SONS, INC. and ZURICH AMERICAN INSURANCE COMPANY |
|---|---|
| ADDRESS:  11 Pleasant Street, Worcester, MA 01609 | ADDRESS:    (Lynch) 50 Lynch Place, Cumberland, RI  02864 |
| | (Zurich Ins) 1299 Zurich Way, Scheumburg, IL  60196 |
| Plaintiff Attorney:  Kurt L. Binder, Esq. | Defendant Attorney: |
| ADDRESS:  Seder & Chandler, LLP, 339 Main Street, Worcester, MA 01608 | ADDRESS: |
| BBO:    646021 | BBO: |

## TYPE OF ACTION AND TRACK DESIGNATION (see instructions section below)

| CODE NO.<br>B04 | TYPE OF ACTION (specify)<br>Other negligence-Property Damage | TRACK<br>F | HAS A JURY CLAIM BEEN MADE?<br>☒ YES   ☐ NO |
|---|---|---|---|

*If "Other" please describe:

| Is there a claim under G.L. c. 93A?<br>☒ YES   ☐ NO | Is there a class action under Mass. R. Civ. P. 23?<br>☐ YES   ☒ NO |
|---|---|

### STATEMENT OF DAMAGES PURSUANT TO G.L. c. 212, §3A

The following is a full, itemized and detailed statement of the facts on which the undersigned plaintiff or plaintiff's counsel relies to determine money damages. For this form, disregard double or treble damage claims; indicate single damages only.

**TORT CLAIMS**

A. Documented medical expenses to date

   1. Total hospital expenses
   2. Total doctor expenses
   3. Total chiropractic expenses
   4. Total physical therapy expenses
   5. Total other expenses (describe below)

   **RECEIVED**

   SEP 2 8 2021

   Subtotal (1-5):     $0.00

B. Documented lost wages and compensation to date      **CLERK OF COURTS**
C. Documented property damage to date                  **WORCESTER COUNTY**
D. Reasonably anticipated future medical and hospital expenses
E. Reasonably anticipated lost wages
F. Other documented items of damages (describe below)

   TOTAL (A-F):     $0.00

G. Briefly describe plaintiff's injury, including the nature and extent of injury:

Property damages caused by Defendant Lynch's negligent actions and conduct constituting negligence, trespass, nuisance and violation of G.L. c. 93A; and Defendant Zurich's unfair claim settlement practices in violation pursuant to revolving credit agreement Mass R. Civ. P. 8.1(e).

**CONTRACT CLAIMS**

☐ This action includes a claim involving collection of a debt incurred pursuant to a revolving credit agreement. Mass R. Civ. P. 8.1(e).

| Item # | Detailed Description of Each Claim | Amount |
|---|---|---|
| 1. | Property damages caused by Defendant Lynch's negligent actions and conduct constituting negligence, trespass, | |
| 2. | | |
| | Total | $250,000+ as to each defendant |

Signature of Attorney/Unrepresented Plaintiff: X                      Date:

RELATED ACTIONS: Please provide the case number, case name, and county of any related actions pending in the Superior Court.

n/a

### CERTIFICATION PURSUANT TO SJC RULE 1:18

I hereby certify that I have complied with requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods of dispute resolution.

Signature of Attorney/Unrepresented Plaintiff: X                      Date:  9/28/2021

| CIVIL TRACKING ORDER<br>(STANDING ORDER 1- 88) | DOCKET NUMBER<br>2185CV01072 | Trial Court of Massachusetts<br>The Superior Court |
|---|---|---|

| CASE NAME:<br>Panadorou Properties, LLC et al vs. J.H. Lynch & Sons, Inc et al | Dennis P. McManus, Clerk of Courts |
|---|---|
| TO: Kurt L Binder, Esq.<br>Seder and Chandler LLP<br>339 Main St<br>Suite 300<br>Worcester, MA 01608 | COURT NAME & ADDRESS<br>Worcester County Superior Court<br>225 Main Street<br>Worcester, MA 01608 |

## TRACKING ORDER - F - Fast Track

You are hereby notified that this case is on the track referenced above as per Superior Court Standing Order 1-88. The order requires that the various stages of litigation described below must be completed not later than the deadlines indicated.

### STAGES OF LITIGATION                                       DEADLINE

|  | SERVED BY | FILED BY | HEARD BY |
|---|---|---|---|
| Service of process made and return filed with the Court |  | 12/27/2021 |  |
| Response to the complaint filed (also see MRCP 12) |  | 01/26/2022 |  |
| All motions under MRCP 12, 19, and 20 | 01/26/2022 | 02/25/2022 | 03/28/2022 |
| All motions under MRCP 15 | 01/26/2022 | 02/25/2022 | 03/28/2022 |
| All discovery requests **and depositions** served and non-expert depositions completed | 07/25/2022 |  |  |
| All motions under MRCP 56 | 08/24/2022 | 09/23/2022 |  |
| Final pre-trial conference held and/or firm trial date set |  |  | 01/23/2023 |
| Case shall be resolved and judgment shall issue by |  |  | 09/28/2023 |

**The final pre-trial deadline is not the scheduled date of the conference.** You will be notified of that date at a later time.

**Counsel for plaintiff must serve this tracking order on defendant before the deadline for filing return of service.**

This case is assigned to

| DATE ISSUED<br>09/28/2021 | ASSISTANT CLERK<br>**Laurie Jurgiel** | PHONE |
|---|---|---|

Date/Time Printed: 09-28-2021 15:35:00

SCV026\ 08/2018

COMMONWEALTH OF MASSACHUSETTS

WORCESTER, SS.

SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT
CIVIL ACTION NO.   2185 CV 01072

|  |  |
|---|---|
| PANADOROU PROPERTIES, LLC and<br>CHRIS J. PANAGIOTIDIS, ESQ.<br>Plaintiffs<br><br>v.<br><br>J.H. LYNCH & SONS, INC. and<br>ZURICH AMERICAN INSURANCE COMPANY<br>Defendants | COMPLAINT **RECEIVED**<br><br>SEP 2 8 2021<br><br>CLERK OF COURTS<br>WORCESTER COUNTY |

## INTRODUCTION

This is an action brought by Plaintiffs, Panadorou Properties, LLC and Chris J.
Panagiotidis, Esq., against (1) the Defendant, J.H. Lynch & Sons, Inc., for property damages
caused by said Defendant's negligent actions and conduct constituting negligence, trespass,
nuisance and violation of G.L. c. 93A, and (2) said Defendant's insurer, Zurich American
Insurance Company, for unfair claim settlement practices in violation of G.L. c. 176D and c.
93A.

## PARTIES

1.    Plaintiff, Panadorou Properties, LLC ("Panadorou Properties"), is a Massachusetts
limited liability company with a principal place of business at 11 Pleasant Street, Suite 430,
Worcester, Worcester County, Massachusetts 01609. At all times material hereto, Panadorou
Properties has been engaged in the business of ownership, development and leasing of real estate
and related interests.

2.      Plaintiff, Chris J. Panagiotidis, Esq. ("Attorney Panagiotidis"), is an individual residing at 8 Juniper Hill Road, Boylston, Worcester, Worcester County, Massachusetts 01505. At all times material hereto, Attorney Panagiotidis was an attorney in good standing, operating his law practice from offices located at 11 Pleasant Street, Worcester, Worcester County, Massachusetts 01609.

3.      Panadorou Properties and Attorney Panagiotidis are collectively referred to herein as "Plaintiffs".

4.      Defendant, J.H. Lynch & Sons, Inc. ("Lynch"), is a Rhode Island corporation, with a principal place of business at 50 Lynch Place, Cumberland, Rhode Island 02864. At all times material hereto, Lynch was engaged in business and in trade or commerce within the Commonwealth of Massachusetts.

5.      Defendant, Zurich American Insurance Company ("Zurich"), is an insurance company and foreign corporation with a place of business at 1299 Zurich Way, Schaumburg, Illinois, contracted to insure persons, property and/or risks within the Commonwealth of Massachusetts. At all times relevant hereto, Zurich was engaged in the business of insurance and in trade or commerce within the Commonwealth of Massachusetts with regard to insurance and the settlement of claims, and was licensed with the Commonwealth of Massachusetts Division of Insurance with regard to insurance.

## FACTUAL BACKGROUND

### The Premises / The Lynch Contract:

6.      Panadorou Properties is the owner of the property located at 9-11 Pleasant Street, Worcester, Massachusetts (hereinafter, the "Premises") by deed dated March 31, 2005 and recorded with the Worcester District Registry of Deeds at book 36029, Page 94.

2

7.    From and since the time that it acquired the Premises, Panadorou Properties has developed the Premises as a commercial property, leasing office spaces therein, including leasing space in the basement level of the Premises to Attorney Panagiotidis.

8.    On or about March 19, 2018, the City of Worcester put out a bid (bid number 6933-K8) for public contract to resurface various City streets, including sidewalk replacement and resurfacing of the sidewalk on Pleasant Street directly in front of and adjacent to the Premises (the "Project").

9.    Lynch was awarded the public contract as the contractor for the Project.

**The Defective Sidewalk Work**

10.    On or about October 11, 2018, Lynch commenced work at the Project. During this work, Lynch demolished and removed brick facing on the base of the Building where it meets the sidewalk. Lynch then removed all of the existing metal flashing and damproofing between the brick facing and the basement level of the Building.

11.    The basement level of the Building is a vaulted structure which extends beyond the face of the Building and under the sidewalk. The metal flashing and damproofing extended down the face of the Building and then over the vaulted area and under the sidewalk. The purposes of the metal flashing was to act as a water barrier preventing sidewalk water runoff from entering the basement.

12.    After the flashing and damproofing on the Building was removed and/or damaged by Lynch, water intrusion and flooding into the Building began almost immediately, including the following:

   (a) All rooms/areas/closets along the front of the basement office suite began taking on water that came down from the street level;

   (b) Water poured into the space and was partially collected in trash cans and buckets;

3

(c) The water-saturated ceiling partially collapsed in the center office; and

(d) Glued-down commercial carpeting was water saturated throughout the space.

13.     The Plaintiffs promptly informed the City of Worcester and Lynch of the water problems at the Premises.

14.     Thereafter, from November 2018 until February 2019, Lynch made several attempts to temporarily repair the damproofing and flashing located below the level of the sidewalk which was damaged by Lynch during the Project work. All of these attempts at temporary repairs proved unsuccessful and water intrusion into the Premises has since continued to occur on a regular basis.

15.     Plaintiffs subsequently discovered that Lynch never applied for a building permit for the removal and replacement of the flashing and damproofing on the below grade basement walls at the Premises, as required by 780 CMR 9th Edition (the "Building Code"). These Building Code permit requirements involve the regulations applying to repairs for damage to the below grade structures and the damproofing, the requirements that pertain to emergency repairs and the requirements for a building permit for the emergency repairs and the procedures for the repairs and the permit process for the permanent repairs.

16.     The purpose of the permit application is to review the submission of construction documents detailing the proposed exterior wall work, including flashing, water resistant membrane and details around openings, and other information required by the Building Code.

17.     At all times relevant, Lynch was the Construction Contractor at the Project, responsible for compliance with the Building Code, including obtaining all required building permits for the Project work involving the removal, replacement and repair of the flashing and damproofing on the below grade basement walls at the Premises.

4

18.     Lynch violated and committed "unlawful acts" under the Building Code by removing, altering and attempting to repair the flashing and damproofing on the below grade basement walls of the Premises without first applying for and obtaining a building permit.

19.     In late 2020, Lynch completed the Project and poured the new sidewalks in front of the Premises.  However, prior to doing so, Lynch failed to properly install new flashing and damproofing.  Moreover, Lynch failed to apply for and obtain a building permit for the repairs although Plaintiffs had previously notified Lynch of the need to do so.

20.     All of the foregoing work, actions and conduct on the part of Lynch is hereafter referred to as the "Defective Sidewalk Work".

**Plaintiffs' Damages**

21.     In March of 2019, the presence of mold was detected in the basement level of the Premises and high levels of toxic mold were subsequently confirmed by Plaintiffs' April 17, 2019 "Mold Inspection Report" from Gordon Mycology.  The Report confirmed that the significant amounts of mold growth in the basement level of the Premises were found at the areas and on those materials which had been exposed to water intrusion from the Defective Sidewalk Work.

22.     The Mold Inspection Report recommended that the unhealthy basement suite not be occupied and that specialized mold remediation be performed on the contents and structure of the basement suite.

23.     As a result of the mold conditions and water problems, Attorney Panagiotidis was forced to vacate the basement suite, abandon damaged and/or destroyed personal property, and relocate his law office, all causing substantial expense and interruption to his law practice.

5

24.     Furthermore, Panadorou Properties, as the Building owner, has incurred, and will continue to incur, expenses for, *inter alia*, water extraction services, demolition, cleanup/repairs of the water damage, mold testing and remediation, relocation expenses and loss of rents.

25.     Most recently, Panadorou Properties was compelled to retain a masonry/waterproofing contractor to remove, replace and repair the Defective Sidewalk Work, so as to prevent future water intrusion, at a cost of approximately Forty-Five Thousand ($45,000.00) Dollars.

26.     To date, the Plaintiffs' total damages are estimated in excess of Two Hundred and Fifty Thousand ($250,000.00) Dollars.

**Zurich's Initial Investigation / Acceptance of Liability**

27.     At all times relevant, Zurich was the liability insurance carrier for Lynch in connection with its construction operations at the Project.

28.     In December 2018, Plaintiffs initiated their claims with Zurich for the water damages resulting from the Defective Sidewalk Work.  Zurich assigned a claim number (#964 039 5605) and thereafter commenced its investigation.

29.     In connection with the investigation of Plaintiffs' claims, Zurich retained the services of a property loss engineering consultant, Donan Engineering Co., Inc. ("Donan"), who inspected the Premises on December 20, 2018.  Upon information and belief, Donan conducted an assessment of the property damage and cause and origin of the water intrusion at the Premises.

30.     In connection with the investigation of Plaintiffs' claims, Zurich also retained the services of a third-party adjuster, Frontier Adjusters ("Frontier"), to investigate and adjust the damage claims for the Defective Sidewalk Work.  Frontier inspected the Premises on January 9,

2019, and conduced an assessment of the property damage to the Premises from the water intrusion.

31.     During the initial investigation, Zurich was provided with extensive documentation and information (including photographs and videos) from Plaintiffs, directly and through the Plaintiffs' public adjuster, David Benton ("Mr. Benton"), as to the liability of Lynch and the damage causation from the Defective Sidewalk Work, as well as the losses and other damage claims of the Plaintiffs.

32.     During the initial investigation, Zurich assigned responsibility for the claim to its Claim Specialist, Frank LoPresti ("Mr. LoPresti"). Mr. Benton communicated both with Frontier and directly with Mr. LoPresti.

33.     During a conversation on March 12, 2019, Mr. LoPresti confirmed to Mr. Benton that, as a result of their investigation, Zurich had "accepted liability" on behalf of Lynch for the Plaintiffs' losses. Thereafter, by email transmission dated March 20, 2019, Mr. LoPresti wrote to Mr. Benton confirming acceptance of liability and coverage:

> "As discussed, Zurich *has accepted liability* for the loss and coverage
> has been confirmed".  (emphasis added).

34.     At that point in time, Plaintiffs fully expected that Zurich would assume responsibility for all necessary loss control remediation and reimbursement for Plaintiffs' losses.

**Zurich's Unfair Claim Settlement Conduct**

35.     However, in March of 2019, the presence of mold was detected in the basement level of the Premises.

36.     Zurich was promptly informed of the need for mold testing and remediation at the Premises and was subsequently provided with a copy of the Plaintiffs' April 17, 2019 Mold

7

Inspection Report by Gordon Mycology.  This Report confirmed the presence of high levels of toxic mold throughout the basement level of the Premises.

37.     The Mold Inspection Report also confirmed that the significant amounts of mold growth in the basement level of the Premises were found at the areas and on those materials which had been exposed to water intrusion from the Defective Sidewalk Work.  The Report recommended that the unhealthy basement suite not be occupied and that specialized mold remediation be performed on the contents and structure of the basement suite.

38.     Despite Zurich's acceptance of liability and receipt of documented evidence of mold contamination, Zurich failed to take any responsibility for the costs of mold testing or for the necessary remediation recommended in the Mold Inspection Report.

39.     Zurich was aware that during 2019 and 2020, Lynch made several, unsuccessful attempts to temporarily repair the leaks and infiltration at the Premises caused by the Defective Sidewalk Work.  Zurich was also aware that in late 2020, Lynch completed the Project and paved the sidewalk without having installed proper flashing/damproofing and without having obtained the necessary building permit.  Throughout the course of this work, Plaintiffs and their representatives informed both Lynch and Zurich that (a) repair work was insufficient and inadequate to address the ongoing water issues damaging the Premises, and (b) a building permit was required under the Building Code before the repairs could be made.

40.     Despite Zurich's acceptance of liability and its knowledge that Lynch's repairs were unsuccessful, and were performed without the necessary building permit, Zurich failed to take any responsibility for the costs of permanent, repairs sufficient to stop the ongoing water intrusion, or ensure that its insured (*i.e.,* Lynch) comply with the Building Code by applying for a building permit.

41.    On March 26, 2021, Mr. Benton sent Frontier the Plaintiffs' "partial statement of loss" claim package which contained extensive documentation, including receipts and reports verifying the Plaintiffs' damages. The claim amount at that time was $211,107.88.

42.    Despite Zurich's acceptance of liability and receipt of the Plaintiffs' documented statement of loss, Zurich failed to make any settlement offer in response to the March 26, 2021 partial statement of loss claim package.

**Zurich's Change of Position / Bad Faith Conduct**

43.    Instead, in May 2021, Zurich assigned a new Claim Specialist to Plaintiffs' claim, Brook Winters ("Ms. Winters"). By email dated May 12, 2021, Ms. Winters then changed Zurich's previous acceptance of liability by raising new issues as to "the existence of preexisting water infiltration into the building". These issues were unfounded and without any good faith basis, either in law or in fact, and were imposed by Zurich in an effort to further delay settlement of the claim.

44.    By email dated June 21, 2021, Mr. Benton advised Ms. Winters that "[t]here was no prior water infiltration into this lower level law office". Mr. Benton further reminded Zurich of the material facts supporting Lynch's liability:

> "Your Insured, J.H. Lynch (Lynch), failed to properly remove the old sidewalk destroying the building flashing along the front of my client's office building. Lynch made temporary repairs that continued to leak and has since installed the new sidewalk but failed to replace the required flashing. Rain water contained to enter the lower level office space forcing my client to relocate his office. My client has retained a local contractor to correct the sidewalk installation at a cost of $23,950.00."

45.    Thereafter, on July 18, 2021, Mr. Benton sent Ms. Winters an updated and documented new statement of loss increased to the total amount of $223,952.60.

46.    However, Zurich refused to respond to the statement of loss. Instead, Ms. Winters advised Mr. Benton on July 20, 2021 that, "I am still investigating this claim". Ms. Winters' position that Zurich was "still investigating" Plaintiffs' claim was contrary to Zurich's acceptance of liability over two (2) years prior and was raised only to further delay settlement of the claim.

47.    Despite Zurich's initial acceptance of liability, Zurich's investigation of the Plaintiffs' claim over a period of almost three (3) years, and Zurich's receipt of detailed, documented statements of loss, Zurich has failed and refused to make a reasonable settlement offer.

48.    Plaintiffs and their representative, Mr. Benton, have repeatedly requested documentation and information from Zurich relative to its claim investigation, including (1) a copy of the insurance policy insuring Lynch; (2) a copy of the Donan investigation report; (3) photographs of the Premises in the possession of Zurich; and (4) any information or documentation to substantiate Ms. Winters' claim of "preexisting water infiltration into the building".

49.    To date, Zurich has failed and refused to provide the requested documentation and information.

50.    It is now apparent that Zurich has stalled and delayed any settlement of this claim over several years, in the bad faith hope and expectation that the then-unrepresented Plaintiffs would miss the three (3) year statute of limitations for commencement of a lawsuit against Lynch.

51.    In sum, Zurich has formulated and implemented unfair claim settlement strategies, including flip-flopping on its acceptance of liability and fabrication of bogus pre-

existing water issues, all in an effort to frustrate and delay the fair and equitable resolution of Plaintiffs' claims.

## COUNT I
### PLAINTIFFS v. LYNCH
#### (Negligence)

52.     The Plaintiffs repeat and reallege paragraphs 1 through 51 as if fully set forth herein.

53.     At all times material hereto, Lynch acted by and through its duly authorized agents, servants and employees and therefore is vicariously liable for their actions and inactions.

54.     The conduct and failures of Lynch and its agents, servants and/or employees was negligent.

55.     As a direct and proximate result of Lynch's negligence, the Plaintiffs incurred significant damages to their business and property from the presence and threat of repeated water leaks and water infiltration at the Premises, as well as toxic mold contamination, for which Plaintiffs have suffered, and continue to suffer, substantial damages, for which Lynch is responsible.

WHEREFORE, the Plaintiffs, Panadorou Properties, LLC and Chris J. Panagiotidis, Esq., demand judgment in their favor against the Defendant, J.H. Lynch & Sons, Inc., on Count I of the Complaint for all damages, in an amount to be determined at trial, caused by the foregoing negligence, together with interest, costs, reasonable attorney's fees and such other and further relief as this Honorable Court deems just and proper.

## COUNT II
### PLAINTIFFS v. LYNCH
#### (NUISANCE)

56.     The Plaintiffs repeat and reallege paragraphs 1 through 55 as if fully set forth

herein.

57.     The presence and threat of repeated water leaks and water infiltration and formation of toxic mold has posed, and continues to pose, a continuing substantial threat to and interference with Plaintiffs' property interests and their use and enjoyment of the Premises.

58.     Lynch's conduct in creating such threat and interference was negligent, reckless or ultra-hazardous, and Lynch's interference with Plaintiffs' use and enjoyment of the Premises was unreasonable.  By reason of the foregoing, Lynch created a nuisance.

59.     As a direct and proximate result of the nuisance created by Lynch, the Plaintiffs have suffered, and continue to suffer, substantial damages described above for which Lynch is liable.

WHEREFORE, the Plaintiffs, Panadorou Properties, LLC and Chris J. Panagiotidis, Esq., demand judgment in their favor against the Defendant, J.H. Lynch & Sons, Inc., on Count II of the Complaint for all damages, in an amount to be determined at trial, caused by the foregoing nuisance, together with interest, costs, reasonable attorney's fees and such other and further relief as this Honorable Court deems just and proper.

### COUNT III
### PLAINTIFFS V. LYNCH
### (TRESPASS)

60.     The Plaintiffs repeat and reallege paragraphs 1 through 59 as if fully set forth herein.

61.     Lynch knew or had substantial reason to know that the aforementioned acts and omissions would cause repeated water leaks and water infiltration and the formation of mold, so as to physically invade upon the Premises in a manner in which it did not naturally do so.

62.    The aforementioned acts and omissions on the part of Lynch amounted to a deliberate physical invasion of Plaintiffs' property and property rights which constitutes a continuing trespass.

63.    As a direct and proximate result of Lynch's trespass, the Plaintiffs have suffered, and continue to suffer, substantial damages as described above for which Lynch is liable.

WHEREFORE, the Plaintiffs, Panadorou Properties, LLC and Chris J. Panagiotidis, Esq., demand judgment in their favor against the Defendant, J.H. Lynch & Sons, Inc., on Count III of the Complaint for all damages, in an amount to be determined at trial, caused by the foregoing continuing trespass, together with interest, costs, reasonable attorney's fees and such other and further relief as this Honorable Court deems just and proper.

## COUNT IV
### PLAINTIFFS V. LYNCH
### (Violation of M.G.L. c. 93A, §§2 and 11 Unfair or Deceptive Acts or Practices)

64.    The Plaintiffs repeat and reallege paragraphs 1 through 63 as if fully set forth herein.

65.    At all times material to this Complaint, Lynch was engaged in trade or commerce in the Commonwealth of Massachusetts within the meaning of G.L. c. 93A.

66.    The actions and conduct of Lynch were unfair and deceptive acts or practices in violation of G.L. c. 93A, §§ 2 and 11, including, but not limited to, demolishing and/or damaging brick facing, flashing and damproofing on the Building during the course of the Project work; neglecting to apply for and obtain a building permit in connection with the Project work and repairs to the below grade structures and exterior wall portions of the Building, in violation of the Building Code; failing and neglecting to perform permanent repairs sufficient to stop the ongoing water intrusion at the Premises; and failing and neglecting to conduct any water

13

mitigation measures at the Premises when it knew, or should have known, of the development of widespread mold contamination throughout the basement level of the Premises.

67.    The unfair and deceptive acts or practices of Lynch were conducted in willful and knowing violation of G.L. c. 93A and, therefore, the Plaintiffs are entitled to recover multiple damages, as well as attorneys' fees, interest, and costs.

WHEREFORE, the Plaintiffs, Panadorou Properties, LLC and Chris J. Panagiotidis, Esq., hereby demand judgment in their favor against the Defendant, J.H. Lynch & Sons, Inc., on Count IV of the Complaint for all damages in an amount that the finder of fact shall deem just and proper for (a) violation of G.L. c. 93A; (b) double or treble damages; (c) attorneys' fees; and (d) costs and interest thereon.

## COUNT V
### PLAINTIFFS V. ZURICH
**(Violation of M.G.L. c.93A, §§2, 11 Unfair or Deceptive Acts and Practices and M.G.L. c.176D, §3(9) Unfair or Deceptive Acts or Practices in the Business of Insurance)**

68.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 67 above and incorporate them herein by reference.

69.    Zurich has committed unfair and deceptive acts and practices in violation of the Massachusetts Consumer Protection Act, M.G.L. c.93A, including, but not limited to, the following unfair and deceptive acts or practices:

    a.  misrepresenting pertinent facts and failing to disclose material information during settlement negotiations, in violation of M.G.L. c.176D, §3(9)(a);

    b.  failing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies, in violation of M.G.L. c.176D, §9(c);

    c.  refusing to pay claims without conducting a reasonable investigation based upon all available information, in violation of M.G.L. c.176D, §9(d);

    d.  taking actions to prevent Plaintiffs from obtaining prompt, fair, and equitable settlement of claims, in violation of M.G.L. c.176D, §3(9)(c) and (d);

 e. failing to effectuate prompt, fair, and equitable settlement of Plaintiffs' claims where Zurich's insureds' liability had become reasonably clear, in violation of M.G.L. c.176D, §3(9)(f);

 f. compelling Plaintiffs to institute litigation to recover amounts due under an insurance policy by offering substantially less than amounts ultimately recovered, in violation of M.G.L. c.176D, §3(9)(g);

 g. engaging in the practice of "low balling" by offering much less than the Plaintiffs' claims are worth in a situation where liability is clear, or highly likely; and/or

 h. failing to provide promptly a reasonable explanation of the basis in the insurance policy in relation to the fact or applicable law for denial of a claim or for the offer of a compromised settlement, in violation of M.G.L. c.176D, §3(9)(h).

70. Zurich knew or should have known that these acts or practices were in violation of Sections 2 and 11 of the Massachusetts Consumer Protection Act, M.G.L. c.93A.

71. Zurich used or employed these acts or practices in willful or knowing violation of Sections 2 and 11 of the Massachusetts Consumer Protection Act, M.G.L. c.93A.

72. As a result of the unfair and deceptive conduct of Zurich, the Plaintiffs were injured in that they:

 a. were compelled to commence litigation in order to obtain fair and equitable compensation for their valid claims;

 b. have yet to receive prompt, fair, and equitable settlement of their valid claims;

 c. incurred substantially increased attorneys' fees and litigation expenses in their underlying claims;

 d. lost the value, as measured in annual interest, of having their underlying claims settled fairly, equitably and/or sooner, as they should have been instead of unfairly, inequitably and/or later, or, not at all; and

 e. have suffered aggravation, inconvenience and frustration as a result of Zurich's conduct.

73. The Plaintiffs are entitled to compensatory damages from Zurich for the economic and non-economic damages identified herein; and Zurich is liable to the Plaintiffs for multiple damages predicated on the allegations set forth herein.

WHEREFORE, the Plaintiffs, Panadorou Properties, LLC and Chris J. Panagiotidis, Esq., hereby demand judgment in their favor against the Defendant, Zurich American Insurance Company, on Count V of the Complaint for all damages in an amount that the finder of fact shall deem just and proper for (a) violation of G.L. c. 93A; (b) double or treble damages; (c) attorneys' fees; and (d) costs and interest thereon.

**COUNT VI**
**PLAINTIFFS V. ZURICH**
**(Violation of G.L. c.93A §§ 2, 11 Unfair Methods of Competition
and Unfair or Deceptive Acts or Practices)**

74.     The Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 73 above and incorporate them by reference herein.

75.     Zurich committed unfair and deceptive acts and practices in violation of the Massachusetts Consumer Protection Act, G.L. c.93A §§ 2, 11 as detailed above.

76.     Zurich knew or should have known that these acts or practices were in violation of Sections 2 and 11 of the Massachusetts Consumer Protection Act, G.L. c.93A.

77.     Zurich used or employed these acts or practices in willful and knowing violation of Sections 2 and 11 of the Massachusetts Consumer Protection Act, G.L. c.93A.

78.     As a result of the unfair and deceptive conduct of Zurich, the Plaintiffs were injured in that they:

   a.  were compelled to commence litigation in order to obtain fair and equitable compensation for their valid claim;

   b.  have yet to receive prompt, fair, and equitable settlement of their valid claims;

   c.  incurred substantially increased attorneys' fees in litigation expenses in their underlying claims;

    d.   lost the value, as measured in annual interest, of having their underlying *claims settled fairly, equitably and/or sooner, as they should have been instead of unfairly, inequitably and/or later, or, not at all;* and

    e.   have suffered aggravation, inconvenience and frustration as a result of Zurich's conduct.

79.    The Plaintiffs are entitled to compensatory and multiple damages against Zurich for the economic and non-economic damages identified herein; and Zurich is liable to the Plaintiffs for multiple damages predicated on the allegations set forth herein.

WHEREFORE, the Plaintiffs, Panadorou Properties, LLC and Chris J. Panagiotidis, Esq., hereby demand judgment in their favor against the Defendant, Zurich American Insurance Company, on Count VI of the Complaint for all damages in an amount that the finder of fact shall deem just and proper for (a) violation of G.L. c. 93A; (b) double or treble damages; (c) attorneys' fees; and (d) costs and interest thereon.

THE PLAINTIFFS DEMAND A TRIAL BY JURY ON ALL COUNTS TRIABLE BY JURY

Respectfully submitted,

PANADOROU PROPERTIES, LLC and
CHRIS J. PANAGIOTIDIS, ESQ.
By their attorneys,

Kurt L. Binder (BBO #548621)
Noah A. Ligeti (BBO #692928)
SEDER & CHANDLER, LLP
339 Main Street
Worcester, MA 01608
(508) 757-7721
kbinder@sederlaw.com
nligeti@sederlaw.com

DATED:  September 28, 2021

COMMONWEALTH OF MASSACHUSETTS

WORCESTER, SS.

SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT
CIVIL ACTION NO. 2185 CV 01072

PANADOROU PROPERTIES, LLC  and
CHRIS J. PANAGIOTIDIS, ESQ.
                          Plaintiffs

v.

J.H. LYNCH & SONS, INC. and
ZURICH AMERICAN INSURANCE COMPANY
                          Defendants

)
)
)
)
)
)
)
)
)
)
)

## PLAINTIFFS' FIRST REQUEST FOR PRODUCTION OF DOCUMENTS TO DEFENDANT ZURICH AMERICAN INSURANCE COMPANY

The Plaintiffs, Panadorou Properties, LLC and Chris J. Panagiotidis, Esq., submit this First Request for Production of Documents to the Defendant, Zurich American Insurance Company, pursuant to Rule 34 of the Massachusetts Rules of Civil Procedure, and hereby request that they, by their attorney, be permitted to inspect, copy, and test the originals or copies of the following documents, writings, and tangible things. Production, inspection, and copying shall take place at the office of Plaintiffs' counsel, Seder & Chandler, LLP, 339 Main Street, Worcester, Massachusetts 01608 within thirty (30) days following the date of this request.

For the purposes of this request, terms defined in Superior Court Rule 30A shall have the definitions set forth therein. In addition, the following terms shall have the meanings indicated:

1.       **"Action"** or **"this Matter"** shall mean the matter of *Panadorou Properties, LLC and Chris J. Panagiotidis, Esq., v. J.H. Lynch & Sons, inc. and Zurich American insurance Company,* Worcester Superior Court Civil Action No. 2185 CV 01072.

2.      **"You"**, **"your"**, and/or **"Zurich"** means the Defendant, Zurich American Insurance Company and/or its predecessors, agents, servants, employees, representatives or attorneys, and all other persons acting or purporting to act on its behalf, including but not limited to Frontier Adjusters.

3.      **"Lynch"** means the Defendant, J.H. Lynch & Sons, Inc., and/or its predecessors, agents, servants, employees, representatives or attorneys, and all other persons acting or purporting to act on its behalf.

4.      **"Plaintiffs"** means the Plaintiffs, Panadorou Properties, LLC ("Panadorou Properties") and Chris J. Panagiotidis, Esq. ("Attorney Panagiotidis") and/or its/his/their predecessors, agents, servants, employees, representatives or attorneys, and all other persons acting or purporting to act on its/his/their behalf.

5.      **"Premises"** means the property located at 9-11 Pleasant Street, Worcester, Massachusetts owned by the Plaintiffs.

6.      **"Project"** means the sidewalk replacement and resurfacing work on Pleasant Street, Worcester, adjacent to the Premises, under public contract with the City of Worcester (bid number 6933-K8).

7.      **"Policy"** means Zurich's policy insuring Lynch under Zurich Claim No. 964 039 5605.

8.      **"Communication"** has the same meaning as in Superior Court Rule 30A, including, but not limited to, any written, electronic or oral transmission of fact, information or opinion, including any utterance, notation, or statement of any nature whatsoever, including, but not limited to, documents and correspondence as defined herein.

2

9.      **"Correspondence"** means any letter, telegram, telex, facsimile transmission, TWX, notice, message, electronic mail message, memorandum or other written communication or transcription or notes of a communication.

10.      **"Document"** has the same meaning as in Superior Court Rule 30A and is defined to be synonymous in meaning and equal in scope to the usage of this term in Mass. R. Civ. P. 34, and means any written, recorded or graphic material, which includes, but is not limited to, originals and copies of any letter, request, order, requisition form, proof of payment, change order, notice, invoice, schedule, tabulation, diary, newspaper clippings, internal files, working papers, correspondence, memorandum, telex, telegram, cable, email, instant message, text message, electronic data file, contract agreement, amendment, receipt, manual, journal, ledger, diary, summary or record of telephone or other conversation, personal conversation, interview, meeting or conference, bill voucher, bill, income statement, financial statement, statement of account, checkbooks, canceled checks, deposit ticket, charge slip, statement requesting payment, requisition, file, report, record, study, handwritten note, working paper, chart, paper, drawing, graph, diagram, photograph, film, plan, map, index, tape, voice recording, computer output or input, income tax return, or any other written, printed, typed, recorded, transcribed, taped, photographic or graphic matter, however produced or reproduced, and any and all other writings and recordings of whatever nature, whether signed or unsigned or transcribed and whether assertively privileged or not.  Different versions of the same (e.g., copies of printed document with differing handwritten notations and superseded drafts) are different documents within the meaning of that term as used herein.  The word "Document", in addition to the definition set forth includes Electronically Stored Data (as hereinafter defined) in its native format.

11.     **"Electronically Stored Data"** or **"ESI"** means any information created, stored, or utilized with computer technology of any sort, including but not limited to e-mail servers, desk top computers, laptops, hard drives, servers, back-up tapes, PDAs business applications, such as word processing, databases and spreadsheets; Internet applications, such as e-mail and World Wide Web; devices attached to or peripheral to computers, such as printers, fax machines, pagers, thumb drives, web-enabled portable devices; and in addition, data from and/or stored on and/or emanating from cell phones or mobile phone devices including but not limited to text messages, voice mail systems, word or other documents, videos and the like; and media used to store computer data, such as disks, tapes, removable drives, CDs and the like.

12.     **"Concerning"**, **"Relate"** or **"Relating to"** shall include, but shall not be limited to, refer to, reflect, bear upon, pertain to, are relevant to, and connect with the matters set forth.

In responding to these discovery requests, please furnish all such documentation as is available or known to you and your attorneys, unless such documentation is claimed to be privileged from discovery.  Should you claim privilege, please set forth in detail in your response hereto the grounds for such claim and the general nature of the documentation as to which you claim a privilege.

These discovery requests are continuing in nature.  In the event that any documentation comes to your attention, possession, custody or control subsequent to the filing of responses hereto, which documentation was not included in the initial response, please furnish such additional documentation to the attorneys herein as soon as such documentation is received.

## SPECIFIC DOCUMENT REQUESTS

**Request No. 1**

A true and accurate copy of the complete Policy, with the declarations page, all schedules,

addenda, amendments, riders and/or endorsements.

**Request No. 2**

All witness statements and/or notes of statements made by witnesses obtained by you or anyone on your behalf from any source concerning any of the allegations or events alleged in this Action, recorded or transcribed in any format whatsoever.

**Request No. 3**

Your complete claim file concerning the Plaintiffs' claims.

**Request No. 4**

All communications between Zurich and any other person or entity concerning Plaintiffs and/or Plaintiffs' claims.

**Request No. 5**

All communications between Zurich and Plaintiffs.

**Request No. 6**

All communications between Zurich and Lynch relating to Plaintiffs' claims.

**Request No. 7**

All communications between Zurich and Donan Engineering Co., Inc. relating to the Premises, including any and all reports and/or draft reports.

**Request No. 8**

All documents concerning Zurich's investigation of Plaintiffs' claims.

**Request No. 9**

All documents concerning meetings, discussions or conferences regarding Plaintiffs' claims under the Policy, including without limitation, minutes, notes and calendars of all participant and attendees.

**Request No. 10**

All training materials concerning the policies and procedures for the processing of claims by Zurich's insureds from 2016 to date.

**Request No. 11**

All documents concerning Zurich's internal claim review policies from 2016 to date.

**Request No. 12**

All documents concerning Zurich's internal settlement practices from 2016 to date.

**Request No. 13**

All documents concerning any reserves set for the Plaintiffs' claims in this matter.

Respectfully submitted,

PANADOROU PROPERTIES, LLC and
CHRIS J. PANAGIOTIDIS, ESQ.
By their attorneys,

Kurt L. Binder (BBO #548621)
Noah A. Ligeti (BBO #692928)
SEDER & CHANDLER, LLP
339 Main Street
Worcester, MA  01608
(508) 757-7721
kbinder@sederlaw.com
nligeti@sederlaw.com

DATED:  September 28, 2021